LORETO BACCARI *vs.* B. PERINI & SONS, INC., & others.

Essex.   November 4, 1935. — January 29, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Contract*, Building contract, Performance and breach, Implied, Construction, Usage.  *Evidence*, Of usage, Extrinsic affecting writing. *Damages*, For breach of contract.

In a suit on a written building subcontract fully performed in good faith by the subcontractor except a requirement that he should carry workmen's compensation insurance, which he had been unable to procure, he could recover in *quantum meruit* the contract price less the amount of a premium which the general contractor had been compelled to pay his own insurer because of workmen's compensation paid by it to employees of the subcontractor injured on the job.

In a suit on a written subcontract to set edgestones along a road construction job and to do all the digging required therefor, evidence was admissible of a usage among contractors not to lay macadam pavement until after edgestones had been set; and upon a finding on conflicting evidence that the usage existed and was known to the parties, it was to be considered a tacit term of the subcontract, and the subcontractor could recover as an extra the cost of digging required to remove parts of the pavement prematurely laid by the general contractor.

BILL IN EQUITY, filed in the Superior Court on March 21, 1933.

The decrees entered were by order of *Williams*, J.

*L. Whittemore*, for the defendant B. Perini & Sons, Inc.

*J. J. Gaffney*, for the plaintiff.

CROSBY, J.   This is a suit in equity whereby the plain-. tiff seeks to have applied to the satisfaction of his claim security which was furnished under a written contract between the Commonwealth and B. Perini & Sons, Inc., hereinafter called the defendant.   The defendant in its answer denies the allegations of the bill and in its amended answer sets forth a counterclaim.   The case was referred to a master who heard the parties and their witnesses, and filed a report.   The defendant filed certain objections to the report.   An interlocutory decree was entered confirming the report, except that portion of it which recited testimony to which the defendant had objected.   A final decree was entered for the plaintiff for the full amount of his claim less the amount' of the counterclaim which was allowed. The case is before this court upon appeal by the defendant from the final decree.   It does not appear that any appeal was taken from the interlocutory decree.   G. L. (Ter. Ed.) c. 214, § 27, provides: "Interlocutory decrees not appealed from shall be open to revision upon appeals from final decrees, so far only as it appears to the full court that such final decrees are erroneously affected thereby."   See *Arwshan* v. *Meshaka*, 288 Mass. 31, 34.

The master made the following findings: The suit is brought to recover $1,804.99 with interest from February 7, 1933, as set out in an account marked "A" annexed to the plaintiff's bill.   There was a written contract between the plaintiff and the defendant made September 7, 1932, which incorporated by reference and made a part of said contract, a contract between the Commonwealth and the defendant.   The contract was not changed subsequently to its execution.   It required the plaintiff to set all the necessary edgestones in the construction of a section of a State highway between Boston and Worcester.   The plaintiff set all of the required edgestones provided for in the contract "under the direction of" and to the satisfaction of the engineer in charge for the Commonwealth and also to the satisfaction of the defendant.   The plaintiff covenanted in

the contract to do all the digging, backfilling, tamping and any other work connected with the setting of the edgestones; and agreed to set all such edgestones in such manner that he would not cause any delay in the performance of the contract between the defendant and the Commonwealth, and to carry at all times full and adequate insurance coverage on all liability to the public and employees, and to pay and discharge any and all claims arising from or growing out of the employment of labor. The defendant covenanted to provide all the edgestones, and to pay the plaintiff eight cents per linear foot of edgestone laid by the plaintiff. By agreement of the defendant the plaintiff is entitled to the items in his account annexed amounting to $1,216.19, unless it is found that by reason of his failure to obtain liability and compensation insurance he committed a wilful and substantial breach of the contract. The only items in dispute were those totaling $588.80 for loosening and removing macadam that had previously been laid by the defendant, in order to set the edgestones according to the plan and line as set out in the contract of the defendant with the Commonwealth. The contract did not provide specifically whether or not the roadway or the edgestones were to be laid first or last in relation to each other.

The master further found that all the extra work in dispute between the plaintiff and the defendant was required by the action of the defendant in laying the macadam road before the plaintiff had a reasonable opportunity to set the edgestones, and that the extra work in issue was not made necessary by any delay on the part of the plaintiff; that the number of men and the hours worked by each, as charged for by the plaintiff in the account annexed, are the same as actually were used by the plaintiff in the extra work described; and that the prices paid to the workmen and charged to the defendant were fair and reasonable for such labor.

The following findings also appear: The plaintiff, shortly after the contract declared on was signed, attempted to get liability insurance covering the public and compensa-

tion insurance covering his employees but was unable to do so. He went to the office of the defendant, in Framingham, and informed it of his inability to secure insurance. The defendant called an agent of an insurance company to the office and had a conference in which the plaintiff did not participate. No insurance was ever written covering the plaintiff as to liability or compensation, and the plaintiff started to work without the insurance called for by the contract. During the progress of the work three men were injured, two of them being employees of the plaintiff; the other man was the plaintiff's son. No claim for compensation was made by him. The plaintiff did not discharge or pay their claims, and the insurance company of the defendant paid them compensation. Because of the failure of the plaintiff to carry compensation insurance, the defendant, as a result of the accident, was compelled to pay the sum of $420 as premium to its insurance company; this sum was not the amount of compensation paid by the defendant's insurance company to the injured employees, but was the premium representing the entire payroll of the plaintiff, and was based on the defendant's premium rate. The premium rate for compensation is based on experience; this means "the record of accidents which the assured has had while engaged in the kind of work covered by the insurance policy." The master states that because the plaintiff "did not have compensation coverage on the men working on the Framingham–Natick job it will reflect itself in the defendant's premium rate, for how long and over what period of time, I am unable to say as no evidence was offered on this question." He found that after the accident to the plaintiff's employees and after the defendant paid the premium of $420 to its insurance company the defendant allowed the plaintiff to continue laying edgestones until the completion of the contract; that the plaintiff in good faith substantially performed his contract, and there was no wilful breach on his part; that the defendant owes the plaintiff $1,216.19 made up of items in the account annexed to the plaintiff's bill, and also the sum of $588.80 for extra work caused

by the defendant laying macadam over the surface of the roadway on which the edgestones were set, with interest from the date of the filing of the bill; that if the defendant did not waive its rights under the contract requiring the plaintiff to carry workmen's compensation insurance, then the defendant is entitled to a set-off of $420, which was the premium it had to pay its insurance company because of the injuries received by the plaintiff's employees; and that if the defendant did waive such rights, the defendant is entitled to a set-off of $163.28 which would be the premium required of the plaintiff, based on a rate of $3.14 which was the experience rate established for the plaintiff. The defendant filed eleven objections to the master's report.

An order for a final decree was entered in the Superior Court providing that the defendant was indebted to the plaintiff in the sums of $1,216.19 and $588.80 with interest from the date of the bill, and that the plaintiff was indebted to the defendant in the sum of $420 with interest from the date of the bill; that the net indebtedness of the defendant to the plaintiff was established in the sum of $1,384.99 with interest from the date of the bill. Thereafter a final decree was entered establishing the net indebtedness of the defendant to the plaintiff in the sum of $1,384.99 with interest from March 21, 1933, and ordering that the Commonwealth pay from the money in its hands, to the plaintiff, the amount due him with interest, and directing the application of the security sought to be reached to its satisfaction so far as the money in the hands of the Commonwealth was insufficient. The defendant appealed from the final decree.

The facts found by the master show that the plaintiff acted in good faith and that there was no intentional departure by him from the provisions of the contract which would prevent his recovery under the account annexed for work performed under the terms of the contract and for extra work actually performed and properly charged for. *Glazer* v. *Schwartz*, 276 Mass. 54, 57. *Soares* v. *Weitzman*, 281 Mass. 409. *Zarthar* v. *Saliba*, 282 Mass. 558, 561, and cases therein cited. The master found that the plaintiff, shortly after the contract was signed, endeavored to obtain

insurance, but was unable to secure it, and so informed the defendant. After the injuries to the men, to whom the defendant's insurer was obliged to pay compensation, the defendant permitted the plaintiff to continue to perform his work. The defendant, having voluntarily accepted and received the benefit of his work, with knowledge that the contract was not being fully performed, cannot rely on the failure of the plaintiff to perform the residue, as a defence to its liability to pay for what it had received. In the case of *McCue* v. *Whitwell*, 156 Mass. 205, it was said by Knowlton, J., speaking for the court at page 207: "There are other cases where a builder may recover, under a contract to erect or repair a building . . . without showing complete performance of his contract. If he has acted in good faith in an effort to perform it, and has substantially, although not fully, performed it, he may recover the contract price, less such deduction as should be made on account of the errors or omissions in doing the work." The defendant is entitled to a reduction in the amount of the damage it has suffered by reason of the failure of the plaintiff to obtain insurance. *Hooper* v. *Cuneo*, 227 Mass. 37, 39. Am. Law Inst. Restatement: Contracts, § 317. The cases of *Smedley* v. *Walden*, 246 Mass. 393, and *Glazer* v. *Schwartz*, 276 Mass. 54, and others cited by the defendant, are not contrary to what is here decided. In each of those cases there was evidence of a wilful intention on the part of the promisor not to comply with the terms of the contract.

The plaintiff is entitled to recover the amounts charged and allowed for the extra work caused by the defendant laying macadam over the roadway in which the edgestones were set. *Howard* v. *Harvard Congregational Society*, 223 Mass. 562. Although the contract provided that the plaintiff was to do all the digging, there was evidence of a usage that a roadbed of macadam was never laid before the edgestones were set in position. The contract of the plaintiff to do all the digging must be interpreted in view of this usage. Work incurred by the plaintiff as a result of the disregard of this usage by the defendant manifestly would not be included within the terms of the plaintiff's

contractual obligation.   Valid usages known to contracting parties, respecting the subject matter of an agreement, are by implication incorporated therein, unless expressly or impliedly excluded by its terms, and are admissible to aid in its interpretation, not as tending in any respect to contradict or vary a contract, but upon the theory that the usage forms a part of the contract.   *Macy* v. *Whaling Ins. Co.* 9 Met. 354, 362.   *Florence Machine Co.* v. *Daggett*, 135 Mass. 582, 583.   *Hutchins* v. *Webster*, 165 Mass. 439, 441. Am. Law Inst. Restatement: Contracts, §§ 246, 248 (2). The testimony of a witness who had been employed as a road builder for twenty-eight years was sufficient to warrant a finding of a usage, and that these parties contracted with reference to it.   *A. J. Tower Co.* v. *Southern Pacific Co.* 184 Mass. 472; *S. C.* 195 Mass. 157.   A finding of such a usage is not to be overturned because of other facts found by the master, to the effect that before the contract in question was entered into these parties had agreements as to other roads, and that it was a practice between them under these other contracts where the macadam was laid on that part of the roadway on which edgestones were to be set to furnish the same number of men to break and loosen the macadam which had been previously laid, and no charge for the labor of the men so employed was made by either party against the other.   *MacLeod* v. *Davis*, 290 Mass. 335, 337–338.   There is nothing in the master's report to show how often or to what extent macadam was laid before edgestones were set under other contracts.   There are no facts found which establish a usage to lay macadam first and edgestones afterwards.   The most that the facts show is that where macadam had been laid before the edgestones were set, both parties took part in the work of removing the macadam.   The fact that the defendant furnished men to aid in the removal of the macadam is evidence that it felt obligated with respect to work resulting from laying the macadam.   Evidence of instances where macadam was laid before edgestones were set does not as matter of law render unsupportable a finding of a general usage to the contrary based upon the testimony

of witnesses whose credibility was for the master to determine. *Jones* v. *Hoey,* 128 Mass. 585, 587. *Barrie* v. *Quinby,* 206 Mass. 259, 265. Evidence of instances where macadam was laid before edgestones were set was properly considered only as showing the nonexistence of a usage. *Goodwin* v. *Boston & Lowell Railroad,* 111 Mass. 487. Where the usage is established the presumption is that the parties contracted with reference to it. *Bradford* v. *Drew,* 5 Met. 188, 191. *South Deerfield Onion Storage Co.* v. *New York, New Haven & Hartford Railroad,* 222 Mass. 535, 537. The finding of the master that the charges of the plaintiff for extra work were fair and reasonable is not so inconsistent with the subsidiary findings that it cannot stand. *MacLeod* v. *Davis,* 290 Mass. 335, 337–338. The value of the services rendered by the plaintiff, or the materials furnished and the amount of compensation due therefor, may be shown by competent evidence of any material and relevant matter bearing upon such issue. The number of men employed by the plaintiff, the hours worked by each, and the prices paid, could properly be found to be fair and reasonable for the extra work, when the method of doing the work was that adopted by the plaintiff on other highways and under the contract here considered was without objection from the defendant. *Walker* v. *Russell,* 240 Mass. 386. *Evers* v. *Gilfoil,* 247 Mass. 219, 224.

As no error appears the decree entered is to be affirmed.

*Ordered accordingly.*