HARDWARE SPECIALTIES, INC. *vs.* MISHARA CONSTRUCTION
COMPANY, INC.

Berkshire.    April 19, 1974. — May 21, 1974.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Public Works.   Contract,* For public works, Building contract, Con-
struction, Subcontract.  *Practice, Civil,* Auditor:   findings.  *Evi-
dence,* Of business custom, Extrinsic affecting writing.

A finding in an action by an auditor whose findings were not to be
final lost its artificial legal force as prima facie evidence when
evidence to the contrary was introduced at trial, but remained
evidence there warranting a finding in accordance with it.   [280-
281]

In an action by the finish hardware subcontractor against the general
contractor on a public building construction project subject to
G. L. c. 149, §§ 44A-44J, to recover the cost of installing finish
hardware which the plaintiff by the subcontract and the provisions
of the finish hardware section of the specifications was required to
furnish to the project, where such provisions were ambiguous as to
who was to install the finish hardware so furnished, it was proper
to introduce, not to vary the subcontract but to interpret it, evi-
dence of a trade custom that a subcontractor furnishing finish
hardware not install it, and, in the circumstances and in view of
the third sentence of § 44C, it was also proper for the trier of fact
to consider provisions of the carpentry section of the specifications
expressly requiring the installation of finish hardware by the car-
pentry subcontractor; and a finding for the plaintiff was war-
ranted.   [282-284]

CONTRACT.    Writ in the District Court of Central Berk-
shire dated December 20, 1968.

Following removal to the Superior Court, the action
was referred to an auditor and thereafter was heard by
*Vallely,* J.

*David C. Hawkins* for the defendant.

*Sally A. Corwin* for the plaintiff.

GRANT, J. This is an action of contract by which the
plaintiff, as the finish hardware subcontractor on the

same public housing project as that considered in *Mishara Constr. Co. Inc.* v. *Transit-Mixed Concrete Corp.* 365 Mass. 122 (1974), seeks to recover from the defendant, as the general contractor on that project, the cost of installing the items of finish hardware which the plaintiff, by reason of the subcontract, was required to and did deliver to the project. The matter was referred to an auditor (facts not final), who found for the plaintiff. The defendant reserved the right to introduce further evidence, and the matter was thereafter tried to a judge of the Superior Court on the auditor's report and certain further evidence. The judge found generally for the plaintiff, and the matter is now here on the defendant's exception to the denial of its requests for rulings of law.

The 1966 subcontract, which takes the form appearing in G. L. c. 149, § 44I, as amended by St. 1960, c. 771, § 7, requires the plaintiff to "furnish all labor and materials required for the completion of all work specified in" § 10A of the specifications ("Finish Hardware") prepared by the architect for the Pittsfield Housing Authority (authority). The express provisions of § 10A need not be detailed in any greater length than is necessary to demonstrate that they are ambiguous on the question who is to install the finish hardware. Although certain of the provisions of § 10A-01 ("General Requirements") and § 10A-09 ("Installation") look in the direction of installation by the plaintiff, the provisions of § 10A-02 ("Scope of the Work") are strangely silent on the question of installation, providing only that the "[s]cope of work includes furnishing, delivery, packaging, and marking of all finish hardware required for completion of the building requirements." The provisions of § 10A-04 ("Hardware Schedule") require the plaintiff to supply thirteen different "sets" of finish hardware for use at particular locations in the buildings, each "set" to include specifically designated items such as butts, locksets, lock cylinders, stops, push plates, and kick plates. The provisions of § 10A-06 ("Packing and Marking") require the plaintiff to "[p]ack-

age each item of hardware separately in individual containers, complete with the necessary screws, bolts, and fastenings, keys, instructions, and templates" and to "[m]ark each item with the heading number corresponding to the number as shown on the . . . Hardware Schedule." The provisions of § 10A-07 ("Delivery") require that "[t]emplates for template hardware shall be delivered to the Metal Frame Fabricator," that "[a]ll other hardware shall be delivered to the [defendant] for field installation," and that "[d]elivery shall be made by the Hardware Supplier . . . in ample time so as not to impede progress of the work." Sections 10A-04, 10A-06, and 10A-07, read together and standing by themselves, look to installation by the defendant or by a third party of the items the plaintiff is required to supply; there would seem to be no need for separate packing, for written instructions, or for prior delivery to the defendant if it were intended that the plaintiff should install all the items in question.

In these circumstances, evidence of the business custom of the finish hardware supplier either to install or not to install the items to be supplied by him was admissible to resolve the ambiguity with respect to the duty of installation. See *Fred C. McClean Heating Supplies, Inc.* v. *Jefferson Constr. Co.* 339 Mass. 356, 367-369 (1959); *Metro Insulation Corp.* v. *Leventhal,* 1 Mass. App. Ct. 213, 219 (1973). Contrast *Daly* v. *Kingston,* 177 Mass. 312, 316-317 (1901); *Meegan* v. *Hall,* 241 Mass. 449, 451-452 (1922). Such evidence appears to have been received by the auditor, who expressly found that "it was the custom under then current trade practices for the subcontractor supplying finish hardware not to install the same."[1] There was conflicting evidence before the trial judge on the question whether there was such a trade practice as that found by the auditor.

---

[1] In its brief the defendant has expressly waived its exception to the denial of its motion to strike this and the other portions of the auditor's report which are quoted or referred to in this opinion.

It should be apparent from what has already been said that we see no error in the denial of the defendant's request 4, which was "[t]hat the terms of the subcontract between plaintiff and defendant were unambiguous and may not be varied by evidence of custom and usage regarding responsibility for installation of finish hardware." The argument that a contract may not be "varied" by evidence of pertinent custom and usage misconceives the role played by such evidence. "Valid usages known to contracting parties, respecting the subject matter of an agreement, are by implication incorporated therein, unless expressly or impliedly excluded by its terms, and are admissible to aid in its interpretation, not as tending in any respect to contradict or vary a contract, but upon the theory that the usage forms a part of the contract." *Baccari* v. *B. Perini & Sons, Inc.* 293 Mass. 297, 303 (1936).

On somewhat similar reasoning there was no error in denying the defendant's requests 2, 3, 7, and 9.[2] Although the above quoted finding of the auditor with respect to "the custom under then current trade practices" lost its artificial legal force as prima facie evidence as soon as the defendant introduced evidence before the judge which tended to negative the existence of any such custom, that finding continued to be evidence in the case on which the judge could base a general finding for the plaintiff. *Cook* v. *Farm Serv. Stores, Inc.* 301 Mass. 564, 565-567 (1938). In short, as it was

---

[2] "2. That the evidence requires a finding that plaintiff was required under its subcontract with defendant to install the hardware supplied pursuant to Section 10A of the specifications. 3. That under the terms of the subcontract between plaintiff and defendant, plaintiff was required to install the hardware it supplied pursuant to Section 10A of the specifications. . . . 7. That upon all the evidence, plaintiff was required under its subcontract with defendant to install the finish hardware supplied under Section 10A of the specifications. . . . 9. That plaintiff is obligated to perform all work described in its subcontract with defendant, including those provisions including specifications referred to therein."

open to the judge to find a custom in the trade that the finished hardware supplier not install what he supplied, he could not properly have ruled as a matter of law that the plaintiff was required to install the hardware in question.[3]

Requests 5, 6, and 8 may be considered together. The auditor found in his report that another section of the specifications in the contract between the defendant and the authority, dealing with the carpentry subcontractor, contained the provisions set out in the margin.[4]  In another part of the report the auditor stated that "[i]n writing the specifications for the contract . . . it was the opinion of the . . . [authority] that it was not customary under then current trade practices for the subcontractor providing finish hardware to install the same, and the installation of the finish hardware was expressly required by the . . . [authority] in Section 6A of the specifications, relating to the work to be performed by the carpentry subcontractor."  Request 8 was to the general effect that the provisions of the finish hardware specifications could not be varied by anything found in the carpentry specifications.  Requests 5 and 6 were framed with a view to requiring the judge to ignore the statement just quoted.  We would be inclined to agree that in the ordinary case one subcontractor should not be permitted to escape the obligations he has assumed under

---

[3] To the extent that requests 3, 4, and 9 sought to confine the judge's consideration to the written "terms of the subcontract" or to the written "specifications," they were properly denied as addressed to only a portion of the evidence upon the main issue in the case (*Casey* v. *Gallagher*, 326 Mass. 746, 748 [1951]) because, as the *Baccari* case teaches, a usage in the trade, once found to exist, "forms a part of the contract" (293 Mass. at 303).

[4] "Scope of work includes all framing . . . rough hardware, installation of finished hardware and millwork furnished by others . . ." (§ 6A-02) and "Receive, check and apply all finish hardware furnished under Section 10A Finish Hardware.  All Hardware shall be installed in strict accordance with the manufacturer's instructions" (§ 6A-16).

his subcontract by pointing to the obligations which a second subcontractor may have assumed in a separately negotiated contract between himself and the general contractor. Compare *Russo* v. *Charles I. Hosmer, Inc.* 312 Mass. 231, 234-235 (1942). However, in the circumstances of this case, we cannot agree that there was any error in the judge's having looked at the carpentry specifications.

This case is governed by the specific provisions of G. L. c. 149, §§ 44A-44J, as amended. The first sentence of § 44C (as appearing in St. 1956, c. 679, § 1) required that the contract awarded to the defendant include specifications detailing all labor and materials to be furnished thereunder. The second sentence of that section (as appearing in St. 1964, c. 523) required (with possible exceptions not here material) that there be a separate section of the specifications for each of seventeen (or more) distinct classes of work. The third sentence of § 44C (as appearing in St. 1957, c. 590, § 2) required that "[e]ach separate section in the specifications . . . [should] require the subcontractor to install all materials to be furnished by him . . . other than materials which in the opinion of the awarding authority it . . . [was] not customary under then current trade practices for such subcontractor to install and the installation of which . . . [was to be] expressly required by another section of the specifications." The statute was designed to secure for the awarding authority a general contract which would include and cover all the labor and materials necessary to the completion of the entire project and would allocate the responsibility for the installation of each item of material to a particularly identified subcontractor. Whether a specific item of material should be installed by the subcontractor who would be required to supply it or by some other subcontractor depended on the opinion of the awarding authority (i.e., of its architect) as to the custom under then current trade practices. Thus, the statute distinctly contemplated the possibility

that responsibility for the installation of materials supplied by one subcontractor might be allocated to another subcontractor. We think the statute also contemplated that in doubtful cases it might be necessary to resort to more than one section of the specifications in order to ascertain the basic intent of the draftsman of all the specifications.

The plans and specifications for the entire project, as well as those for each of the classes of work, were available for inspection by all potential subbidders and general bidders (§ 44A) in advance of the times by which the subbidders and the general bidders were required to submit their respective bids (§ 44H). The subbidders were required to bid on the specifications as drawn (§§ 44C, 44G, and 44H). Although a subbidder might be primarily concerned with the plans and specifications for only one particular class of work, the general bidder would be concerned with the plans and specifications for each of the classes of work involved in the completion of the entire project. Compare *Grande & Son, Inc.* v. *School Housing Comm. of No. Reading,* 334 Mass. 252, 255 (1956). The defendant in this case was even more directly involved in the carpentry specifications. In addition to having been awarded the general contract for the construction of the entire project, the defendant was also the subbidder selected by the authority to perform the work required by the carpentry specifications. See G. L. c. 149, § 44J, as appearing in St. 1956, c. 679, § 1; *Burgess & Blacher Co.* v. *Beverly Housing Authy.* 351 Mass. 88 (1966); *Quincy Ornamental Iron Works, Inc.* v. *Findlen,* 353 Mass. 85, 88-90 (1967).

The problem before the judge was to resolve an ambiguity in the finish hardware specifications drawn by the authority's architect. The law required that the responsibility for the installation of the finish hardware be specifically allocated to one of the subcontractors, but not necessarily to the finish hardware subcontractor. If the specifications for the carpentry work were (as here)

explicit on the point that the carpentry subcontractor was to install the finish hardware, those specifications were a material and permissible aid in construing the ambiguous provisions of the finish hardware specifications. For reasons already noted, the fact that the carpentry specifications were thus explicit was also confirmatory of the existence of a custom in the trade that the finish hardware supplier not install what he supplied. Accordingly, we see no error in the judge's having studied the carpentry specifications and are of the opinion that the defendant's requests 5, 6, and 8 were properly denied.

We hardly need add that anyone reading the finish hardware specifications in the light of the carpentry specifications could well conclude that the defendant was improperly demanding that the plaintiff perform at the plaintiff's expense work which the defendant had expressly undertaken to perform at its own expense. See *Fred C. McClean Heating Supplies, Inc.* v. *Jefferson Constr. Co.* 339 Mass. 356, 362-363 (1959), and the cases cited therein.

We have considered all the requests which have been argued within the meaning of Rule 1:13 of this court (1972), 1 Mass. App. Ct. 889. See *Lolos* v. *Berlin,* 338 Mass. 10, 13-14 (1958).

*Exceptions overruled.*