GERARD J. THIBEAULT *vs*. CHIEF OF POLICE OF FITCHBURG
& another.[1]

Worcester.    May 10, 1976. — May 26, 1977.

Present: HALE, C.J., KEVILLE, & GOODMAN, JJ.

*Police.    Municipal Corporations,* Police.

An order of a city's chief of police establishing a system of "rotating
shifts" of three months' duration for all police officers conflicted
with a city ordinance which provided that the chief of police
"[should], insofar as possible, assign regular members to their pref-
erences for reliefs of duty on the basis of seniority of service."
[360-364]

BILL IN EQUITY filed in the Superior Court on May 31,
1974.

The suit was heard by *Meagher, J.*

*Joseph W. Monahan, III,* for the plaintiff.

*Sanford A. Kowal* for the defendants.

GOODMAN, J.    Gerard J. Thibeault, a patrolman of the
police department of the city of Fitchburg, brought this
action for declaratory and injunctive relief to prevent the
implementation of an order (General Order No. 74-24) by
the chief of police establishing a system of "rotating
shifts." At the time the action was brought Thibeault was
also president of Local 342 of the International Brother-
hood of Police Officers.[2]

---

[1] The mayor of the city of Fitchburg.

[2] The petition (complaint) entered on May 31, 1974, alleges that the
plaintiff was bringing the action "in his own behalf and on behalf of
all other police officers of the City of Fitchburg similarly situated."
Although there is nothing in the record to indicate that the plaintiffs
sought to certify the suit as a class action (Mass.R.Civ.P. Rule 23[b],
effective July 1, 1974, 365 Mass. 768), the defendants have not raised

Thibeault *v.* Chief of Police of Fitchburg.

The present dispute arose in May of 1974 while collective bargaining negotiations were in progress between Local 342 and the city of Fitchburg looking toward a successor agreement to a collective bargaining contract that had, by its express terms, expired on December 31, 1973, but which the parties had orally extended until such time as a new agreement might be reached.[3] One of the issues on which (as alleged in the complaint and admitted by the defendants) the negotiations had reached an impasse was the city's "propos[al] that the union agree to accept a system of rotating shifts" instead of the yearly assignment by seniority based preference to fixed shifts theretofore in effect. In the midst of these negotiations the police chief issued General Order No. 74-24, which (by its terms) became effective on June 3, 1974, "establish[ing] within the Fitchburg Police Department a system whereby the First, Second and Third Reliefs [shifts] shall rotate." Under that order three of the shifts theretofore in effect — viz. 11 P.M. to 7 A.M., 7 A.M. to 3 P.M., and 3 P.M. to 11 P.M. — were retained, and it was required that "[p]atrolmen of each [shift] shall rotate every three months" to another shift.

The plaintiff contends that the order conflicts with the fourth paragraph of art. II, § 16-25, of the General Ordinances of the City of Fitchburg (the shift preference clause). That clause provides that the chief of police "shall, insofar as possible, assign regular members to their preferences for reliefs of duty on the basis of seniority of service..." and further that "[a]ll preferences must be written, signed and submitted to the chief of police by

---

the point as precluding consideration of the merits (*Massachusetts Gen. Hosp.* v. *Rate Setting Commn.* 371 Mass. 705, 713 [1977]) or as limiting the scope of relief (cf. *Attorney Gen.* v. *Kenco Optics, Inc.* 369 Mass. 412, 414-415 [1976]). See *Carpenter* v. *Suffolk Franklin Sav. Bank,* 370 Mass. 314, 317 (1976).

[3] Whether the issuance by the chief of police of the order establishing "rotating shifts" violated the terms of the collective bargaining agreement is not at issue here. Both parties rely on an ordinance, to be discussed hereafter.

December twentieth of each year and shall be in effect only for the following year."[4]

The conflict seems quite apparent; it is obvious that the shifts have not changed; only the method of assigning police officers to the shifts has changed. Instead of assignment by seniority based preference which "shall be in effect only for the following year" the assignment is by preference which is effective only for three months. Thereafter the change to another shift is compulsory without regard to preference or seniority. It is true, as the defendants argue, that the ordinance (apart from such other

---

[4] The full text of art. II, § 16-25, of the General Ordinances of the City of Fitchburg is:

"The chief of police shall have the entire control of the police department and officers and members, whether regular or reserve, and all constables and officers engaged in its service, and may, subject to the approval of the council and mayor, establish rules and regulations for its government and discipline. He shall assign members of the police force, either regular or reserve, to do such duties as he shall determine.

"He shall devote his time to the maintenance and preservation of peace, order and cleanliness of the city. He shall aid in the enforcement of all general and special laws relating to the city and the ordinances thereof, and shall enforce all orders of the mayor and council, relating to the business and duties pertaining to the police department. He shall take notice of all nuisances in streets and public places in the city, and remove the same or take action in relation thereto.

"He shall have, under the direction of the committee of public safety, general charge of all rooms and buildings belonging to the police department, and shall make his quarters at the central police station. He shall require the officers to report to the officer in charge at their respective stations as frequently as he may designate, but at least once in each day that they are on duty, and shall then communicate to them such orders and instructions as he may deem proper.

"He shall, insofar as possible, assign regular members to their preferences for reliefs of duty on the basis of seniority of service to be computed in accordance with chapter 31, section 15D of the General Laws. All preferences must be written, signed and submitted to the chief of police by December twentieth of each year and shall be in effect only for the following year."

The ordinance was adopted pursuant to the broad grant over "Prudential Affairs and Internal Police" in G. L. c. 40, § 21(1). The city of Fitchburg has not accepted either G. L. c. 41, § 97, or § 97A. Thus it has "the alternatives of having a 'strong' chief of police, a 'weak' chief of police, or no chief of police at all." *Chief of Police of Westford* v. *Westford,* 365 Mass. 526, 531 (1974).

statutory restraints as there may be) vests discretion in the chief of police to change the time of each shift and the number of shifts. But the seniority preference clause limits his power to assign individual police officers once the shifts have been established. The ordinance contemplates assignments of "regular members to their preferences for reliefs of duty on the basis of seniority ..." such assignments to continue for a year. To characterize the change here effected as the establishment of "rotating shifts" rather than as reassignment to another shift without regard to seniority is word play. "The employee rights [to shift preference by seniority] ... would be made meaningless by a change to rotating shifts. ... With rotating shifts, the exercise of shift preference by an employee would be destroyed, because he would then be assigned to unpreferred shifts." *U. S. Army Missile Command,* 54 Lab. Arb. 357, 358-359 (1970) (Williams, Arb.).

The defendants argue that we should construe the qualification "insofar as possible" in the ordinance by reference to art. VI (1) of the collective bargaining agreement, which speaks of seniority preference "[i]nsofar as possible and compatible with the needs of the Department ...." So construed, it is contended, the phrase "insofar as possible" goes beyond what seems to us its ordinary purpose — to permit deviations from established procedures due to emergencies or the need for individual changes arising, e.g., from sickness or absence for other reasons. See G. L. c. 4, § 6, Third. It is true that the contract may be consulted for light on the meaning of the phrase in the ordinance, but the words "compatible with the needs of the Department" may be taken not necessarily to broaden the discretion of the police chief, but to narrow his discretion so that when he does deviate from seniority preference to make necessary individual changes, they cannot be discriminatory or made on purely personal considerations. In any event, we find the previous practice of yearly assignments to fixed shifts more persuasive as an indication of the meaning of the ordinance and the contract. *Cleary* v. *Cardullo's, Inc.* 347 Mass. 337, 343 (1964). *Hardware*

*Specialties, Inc.* v. *Mishara Constr. Co. Inc.* 2 Mass. App.
Ct. 277, 280 (1974), citing *Baccari* v. *B. Perini & Sons,
Inc.* 293 Mass. 297, 303 (1936). Compare Uniform Com-
mercial Code, G. L. c. 106, §§ 2-202 (a), 1-205. We also find
significance in the admission by the defendants in their
answer that during the 1974 contract negotiations they
proposed that the union agree to accept a system of ro-
tating shifts, an indication that the initiation of such a
system was a departure from past practices and not per-
mitted under the existing contract.

The construction suggested by the defendants would
dilute the seniority preference clause to the point where
the qualification would swallow the general rule and give
the chief of police a broad discretion. This may be desir-
able, and the notion of rotating shifts in the police depart-
ment may indeed have merit. But "[w]hile some may
believe that the proper organization and operation of a
police department require more flexibility than those pro-
visions permit, that is apparently not the opinion of the
[city council]. And it is to the [city council] that the
Legislature has committed that decision." *Chief of Police
of Westford* v. *Westford,* 365 Mass. at 532.[5]

Accordingly we hold that the general order of the chief
of police No. 74-24 conflicts with art. II, § 16-25, of the
General Ordinances of the City of Fitchburg; the judg-
ment is reversed and the case is remanded to the Superior
Court for the entry of judgment consistent with this
opinion.

*So ordered.*

---

[5] Assertions in the defendants' brief that "to the extent that ... mat-
ters in dispute ... were matters arising out of labor negotiations ..."
a three-judge court was required pursuant to G. L. c. 212, § 30, and
G. L. c. 149, § 20C (but see *Hansen* v. *Commonwealth,* 344 Mass. 214
[1962]), and that the plaintiff was required to exhaust remedies under
c. 150E in this action which is based on the application of the ordi-
nance do not rise to the level of argument and need not be further
considered. See Mass.R.A.P. 16(a)(4), as amended effective February
24, 1975, 367 Mass. 921 (1975); *Gelinas* v. *New England Power Co.*
359 Mass. 119, 126-127 (1971).