MICHAEL M. INGALLS *vs.* JOHN H. GREEN, administrator.

Essex. April 7, 1958. — May 2, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Contract*, What constitutes, For sale of real estate. *Law or Fact.*

The construction of the language of correspondence claimed to give rise to a contract was a question of law for the court. [447]

A contract for sale and purchase of Massachusetts land was not made by correspondence between the landowner in a distant State and a would-be purchaser or his attorney in Massachusetts showing in substance merely that after some preliminaries the landowner made an offer to convey for a certain price to be accepted, upon the offeree's being satisfied with the title, by tender to the landowner in the other State of a deed ready for execution together with the full purchase price, that the offer was never so accepted although the offeree's attorney sent the landowner a substantial deposit against the price with a deed and requested her to send the executed deed to someone in Massachusetts for delivery against payment here of the balance of the price, that thereupon she reaffirmed her offer and advised that there was another possible purchaser interested "whose deed . . . [was] in preparation," and that a few days later she returned the deposit and informed the attorney that the land had been sold and the "full . . . price received." [447–450]

CONTRACT. Writ in the District Court of Southern Essex dated February 11, 1953.

The action was heard by *Cherry, J.*

*Charles Ingram,* (*Nicholas G. Curuby* with him,) for the plaintiff.

*John A. McNiff,* for the defendant.

WHITTEMORE, J. This is the plaintiff's appeal from the dismissal by the Appellate Division of a report in a case tried

Ingalls *v.* Green.

in the District Court of Southern Essex in which the finding was for the defendant. The declaration averred breach by Helen K. Ross of a contract to convey land in Swampscott. The defendant is the administrator of the estate of Ross.

The controlling issue presented by the denial of the plaintiff's requests for rulings is whether a contract was made in the course of an exchange of letters between the plaintiff, or his attorney, in Massachusetts, and Ross in Chicago, Illinois.

The correspondence may be summarized as follows: On February 15, 1952, and on January 7, 1953, the plaintiff wrote Ross asking how much she wanted for the Swampscott property. Ross replied on January 10, 1953, stating the size of the lot and that her price was $5,500 "as of now, . . . subject to change or withdrawal come spring." She wrote also that "Something tells me not to sell it tho I have been tempted and there may be an offer in the mail even now." On January 13 the plaintiff wrote reminding Ross that she had previously offered the property for $5,000 and that "I would like very much to buy it and pay you $5,000 . . .. However, if you still feel that you want $5,500 for the land I will buy it just the same. I know that you will do the fair thing by me, so I am enclosing a check for $100 as a retainer for your land." Ross answered on January 16: "I am returning your check but do not misunderstand. I remember that I held the lot at $5,000 but my price is now $5,500 plus incidental expense. . . . The original plot plan was filed in July, 1945 . . .. It was entered in the forward part of the book because it was not filed at the same time as the deed. [Paragraph] I prefer to have you examine it before you buy. . . . If you still wish to buy please have your lawyer prepare the necessary papers which I will sign if accompanied by your check. . . . P. S. Did I make it clear I must have $5,500 net — purchaser pays cost of transfer and whatever is incidental. Please don't carry on unless you are satisfied to do so." On January 21 the plaintiff sent again his check for $100, saying: "I fully understand . . . that your price to me is $5,500 plus inci-

dental expenses . . . I will have to have your deed so that the lawyer can get . . . [the registry references] . . . . Upon completion of a clear title I will have my lawyer send you the necessary papers and a check for the balance . . . [of] $5,400 . . . . Will you please do something for me, upon the receipt of this letter will you send me a confirmation that I have purchased this land from you so that I will feel free to go ahead with the lawyer. The $100 check is merely a retainer to show that I mean business. You will receive the balance . . . as soon as title clears." Ross answered on January 23: "Please don't think I am trying to block your purchase of the lot . . . . I want you to have it but the check, which I return herewith, is scarcely adequate as a retaining fee." Ross enclosed title references with the letter, and ended the letter with the statement, "Trusting you will now have what you need to proceed with your purchase . . . ." On January 29 an attorney for the plaintiff wrote Ross enclosing checks totaling $500 and a form of deed from Ross to the plaintiff and his wife, as to which the letter read, "Please have this deed acknowledged and then send it to a Lynn or Salem bank [or someone you know] with instructions to deliver it to Michael M. Ingalls on receipt of $5,000. . . . I have advised Mr. Ingalls to adopt this method so that he will not finally part with his money until he [has] received the deed, and you will be amply protected." Ross replied on February 4 that the delay in replying was because she had been ill, and that "I feel that my protection is cash in hand, and with that in mind, [I] will sign the deed to Mr. Ingalls when I have his check for the entire $5,500 — certified if it is a personal check. . . . I think it only fair to advise you that there is another purchaser interested whose deed is in preparation. Am I right in thinking that the deed gives him, Mr. Ingalls, legal ownership when I have had my signature notarized? If so, I will mail the deed to him directly when he has complied with my request." On February 5 the plaintiff's attorney wrote that "Mr. Ingalls would not acquire any effective rights in the property until his deed was recorded in Salem. That is . . .

why I want no more time to elapse than [is] necessary from the moment the deed is delivered until it goes on record." He added that he had spoken with a man in the legal department of a corporation in Boston, who knew Ross's deceased husband, who was willing to act in the matter and that "I hope you will see your way clear to accommodate Mr. Ingalls in this matter. If so, please mail the deed to . . . [the attorney named]." Ross replied on February 9, saying that she was returning "Mr. Ingalls's check. The property has been sold and [the] full amount of price received." The attorney wrote on April 6, 1953, that an examination of the registry records showed an attachment against the property, "just what I sought to guard against by asking you to send the signed deed to someone here . . . . In view of that state of affairs, I brought suit against you and attached your property. . . . [Y]ou had agreed in your letters to hold the property for Mr. Ingalls until May." Ross wrote the attorney on April 14 denying that she had agreed to hold the property for Mr. Ingalls.

The construction of the words of the parties, being entirely in writing, is a matter of law for the court. *Ryder & Brown Co.* v. *E. Lissberger Co.* 300 Mass. 438, 450. *Mellen* v. *Johnson*, 322 Mass. 236, 238. *Symonds* v. *Hardy*, 328 Mass. 566, 568. We agree with the ruling of the trial judge and that of the Appellate Division, that no contract was made between Ross and the plaintiff.

Ross's letter of January 10 was no more than an indication of willingness to receive a proposal and negotiate. *Mellen* v. *Johnson*, 322 Mass. 236, 238–239, and cases cited. Restatement: Contracts, § 25, comment a, illustration 4. No proposal was stated for the usual down payment and a notice was given that there was another pending negotiation. Ross's letter of January 16 did not accept Ingalls's offer of January 13 with its tender of $100 as a deposit. The January 16 letter from Ross stated a new term, that is, payment also of Ross's incidental expense, and it rejected the proposal of a retainer of $100. It contained a counter offer: "If you still wish to buy please have your lawyer prepare the neces-

sary papers which I will sign if accompanied by your check."
This, we think, was more reasonably construable to be, not
a proposal for a contract to convey at a future date for
$5,500 net, with no deposit, or a reasonable deposit, but
rather (as Ross's later letter of February 4 confirmed was
her intention) an offer to convey to be accepted by tender
of a deed ready for signature and a check for the purchase
price. The return of the $100 check on January 16 was ac-
companied not only with the statement quoted just above
but with the additional statement, which we think referred
to the state of title, "I prefer to have you examine it before
you buy." Obviously any buyer would examine title before
taking a deed; Ross's statement at this stage was mean-
ingful only in confirmation of her intent to be bound only
when the buyer, being assured as to her good title, paid her
the full price. Whatever the construction of the January 16
letter as a proposal, the plaintiff's reply of January 21 did
not make a contract. It did not accept the proposal we
think was stated in the January 16 letter, by sending a
deed and the purchase price. The January 21 letter shows
that the plaintiff understood that Ross required payment of
$5,500 to her in Chicago as a condition of signing a deed, but
it retendered the check of $100 as a deposit to bind Ross to
give a deed, later on, on that condition. Nothing Ross had
said or done indicated that such a deposit would be accept-
able to bind such a contract. The prior return of the $100
check spoke against it, and her rejection on January 23 of
$100 as a "retainer" was manifestly not unreasonable. In
the circumstances the letter of January 21 stands as a pro-
posal that Ross forthwith agree to be bound to sign a deed,
when the title should be found clear, upon payment to her
in hand of $5,400, in consideration of a $100 deposit. Ross's
letter of January 23 rejected that proposal. The closing
statement in the January 23 letter, "Trusting you will now
have what you need to proceed with your purchase . . .,"
was, we think, reasonably to be construed as confirmation
that Ross's offer was outstanding, — an offer which could
be accepted by tender of the full purchase price with deed

for her signature. In any event, whatever the letter of January 23 reasonably said to the plaintiff, no contract resulted from the attorney's reply of January 29, for that was a new proposal, that Ross bind herself to convey in consideration of a down payment of $500 and an undertaking of the buyer to pay the balance in Lynn or Salem upon delivery by Ross's agent of an executed deed. Ross's reply of February 4 rejected this proposal and reaffirmed and made explicit Ross's offer to sign the deed upon receipt of the entire sale price. We assume, without deciding, that, except for the reference in this letter to another possible purchaser, Ross's reaffirmance of her offer and her retention of the $500 check would have bound Ross to give the plaintiff a reasonable time to accept her proposal. See Restatement: Contracts, §§ 46, 47. But Ross gave plain notice to the contrary. The statement "I think it only fair to advise you that there is another purchaser interested whose deed is in preparation" was in substance a statement: "I will convey to the first of the two persons interested who meets my terms." In view of this statement Ross's retention of the deposit at most bound her to apply the $500 to the purchase price if an additional $5,000 in certified checks should be tendered prior to conveyance to the other prospect. The closing statement ". . . I will mail the deed to him [Ingalls] directly when he has complied with my request" is subject to the qualification, necessarily implicit in the reference to another purchaser's deed in preparation, that such compliance must be before Ross's conveyance to the other prospect.

The attorney's letter of February 5 was a further attempt to get Ross to agree to deliver a deed against cash in hand in a city in Massachusetts near to the registry in Salem and it was notice to Ross that her proposal, while not rejected, had not, within a time which was sufficient for acceptance, been accepted.

The references to another possible purchaser in the letters of January 10 and February 4 fully answer the contention

that Ross was bound to keep an offer open until "spring" or until May.

The trial judge was right in declining to rule that the "evidence warrants a finding for the plaintiff." It is unnecessary to consider the various propositions stated in other requests of the plaintiff.   *Order dismissing report affirmed.*