LIMBACH COMPANY *vs.* GEORGE B. H. MACOMBER COMPANY.

Suffolk. March 4, 1970. — May 8, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Contract*, Construction, Building contract. *Evidence*, Extrinsic affecting writing. *Equity Pleading and Practice*, Summary judgment.

In a suit in equity by a plumbing subcontractor for a declaratory decree that he was not required by his contract with the defendant general contractor to install internal piping within fume hoods in a building under construction, where it appeared that when the plaintiff submitted his bid the pertinent plans available merely showed rectangular boxes depicting the fume hoods, circles showing the outlets inside the hoods for water, gas, and air services, and parallel lines showing connections only to the outside of the hoods, that a plan specifically defined the circles as "outlets," and that the specifications simply required the plaintiff to furnish required valved water and gas, air and drain connections "to" the fume hoods, it was held, upon a motion by the plaintiff for summary judgment under G. L. c. 231, § 59, as amended

by St. 1965, c. 491, § 1, supported by an affidavit of his engineer that the plans contained no requirements for internal piping, that no genuine issue of material fact existed and that there was no error in allowance of the motion and entry of a final decree in the plaintiff's favor. [480–481]

In a suit in equity by a plumbing subcontractor for a building under construction seeking a determination of a dispute with the defendant general contractor as to whether the plaintiff was required by the subcontract to install internal piping within fume hoods in the building, there was no merit in a contention by the defendant that the architect had rendered an interpretation of the subcontract conclusive on the parties under a provision that "the architect's decision shall be final in matters pertaining to interpretation of plans and specifications," where the dispute was not submitted to the architect as a dispute between the parties, neither the architect nor the owner was responsible for assigning work among subcontractors, and an opinion of the architect relied on by the defendant was not a decision that the plaintiff was required to install the piping. [481–482]

BILL IN EQUITY filed in the Superior Court on January 6, 1967.

The suit was heard by *Leen*, J.

The case was submitted on briefs.

*Stephen A. Hopkins* for the defendant.

*Joseph M. Corwin & Sally A. Corwin* for the plaintiff.

SPALDING, J. This bill for declaratory and other relief seeks a determination of whether a plumbing subcontractor was required to install certain internal piping in the construction of a building at the Massachusetts Institute of Technology (M I T). Both parties moved for a summary judgment pursuant to G. L. c. 231, § 59, as amended by St. 1965, c. 491, § 1. The plaintiff's motion was granted. Although the case was submitted on affidavits accompanying the motions, the judge, as requested by the defendant, made a report of material facts, based, apparently, on the affidavits. The defendant appealed from a decree awarding the plaintiff $18,484.60.

The facts are as follows. This dispute arose out of a written contract between the defendant and M I T entered into on September 23, 1963, for the construction of a Laboratory for the Life Sciences Building. Prior to that date, the defendant had received a bid from the plaintiff for

plumbing and heating work described in plans and specifications dated August 16, 1963. On October 16, 1963, the defendant and the plaintiff entered into a subcontract for the plaintiff to do the work upon which it had submitted its bid. Under the terms of the plumbing specifications the plaintiff was required to "furnish all required labor, materials, equipment . . . necessary for complete safe installation of plumbing work" as indicated on drawings or specified.

Specifications required the plumbing subcontractor to furnish "required valved water and gas, air and drain connections to . . . fume hoods supplied under General Construction Section of Work . . . specified as an 'allowance' item." The defendant was required by the specifications in the base contract to include a cash allowance of $122,000 in its general bid for fume hoods installed complete. At the time the bids were submitted the final design of the fume hoods had not yet been made. There were thus no drawings or specifications containing detailed information on the internal piping within the fume hoods. The only plans available showed rectangular boxes depicting the fume hoods; circles showing the outlets inside the hoods for water, gas, and air services; and parallel lines showing connections only to the outside of the hoods. Neither the fume hoods nor the outlets were to be furnished by the plaintiff.

In May of 1964 bids were invited on the subcontract for the construction of the fume hoods according to specifications then set out. These specifications did not include the internal piping for the hood. The plaintiff never saw this document until after the present dispute arose. On August 24, 1964, the defendant and another subcontractor, Kewanee Manufacturing Company (Kewanee) entered into a subcontract for the construction of the fume hoods as specified.

Early in 1965 a dispute arose between the plaintiff and the defendant as to whether the plaintiff was required to provide the internal piping within the hoods. The plaintiff refused to do the piping on the ground that its

subcontract required piping connections only *to* the hoods. It was agreed in March, 1965, that Kewanee would do the internal piping and the question would be later submitted to "M I T and its architect." On March 30 the defendant wrote the plaintiff that "if this dispute continues, the determination will be under our subcontract with you, Article XVII." [1]  Kewanee completed the internal piping in June, 1965.  In November, the defendant deducted $15,753.20 from its payments to the plaintiff to cover Kewanee's work.  In December, 1965, M I T took occupancy of the building.

In January, 1966, the plaintiff requested arbitration pursuant to art. XVII, named its arbitrator, but withdrew the request two days later without prejudice because the defendant's president and the arbitrator were leaving for vacation.  In April the defendant wrote the architect requesting an interpretation of whether the internal piping "was a part of the base contract work . . . and whether . . . if it was a part of the contract work [it] was included on account of the basic plumbing drawings and specifications."  Although the architect's reply contained intimations that the plumbing specifications included the internal piping, he expressly refrained from allocating the responsibility for that work (among the subcontractors).  His conclusion was merely that the original specifications "demonstrate the [o]wner's right to internal piping of the fume hoods." In September, the plaintiff renewed its arbitration request, but the defendant refused.

---

[1] "Should the [c]ontractor and the [s]ubcontractor fail to agree on any question arising under or in connection with this Agreement other than a question upon which the decision of the [a]rchitect is to be final, the dispute shall be referred for decision to two arbitrators, one to be appointed by each party within two days from the giving of written notice by the aggrieved party that arbitration is desired.  If the two so selected cannot themselves agree upon a decision within four days from their appointments they shall immediately select a third arbitrator and the three shall proceed promptly to a determination of the matter in dispute, the decision of any two to be final and binding upon the [c]ontractor and [s]ubcontractor.  In the event that either party shall fail to appoint an arbitrator within the required time or if the two arbitrators cannot agree upon a third arbitrator within the required time, the dispute shall be referred to the [a]rchitect whose decision shall be final and binding upon both parties.  The expense of such arbitration shall be borne by the party against whom the decision is rendered."

The judge found that the plans available at the time of the subcontract obligated the plaintiff to connect plumbing only to the hoods, and not to provide the plumbing within the hoods. He further found that the arbitration procedure set forth in art. XVII was not followed, nor was the dispute referred to the architect as being "a dispute between the . . . [defendant] and the . . . [plaintiff]."

The defendant argues: (1) the record did not entitle the plaintiff to a summary judgment in its favor; and (2) the defendant was entitled either to a summary judgment, or a trial on the issue of the architect's decision.

1. The defendant contends that the record does not support a summary judgment in favor of the plaintiff because, first, it has failed to show that "no genuine issue of material fact exists," and second, its affidavit is not based "on *personal knowledge* of admissible facts as to which it appears *affirmatively* that the affiant would be competent to testify."

On the question of whether a genuine issue of material fact existed, the defendant argues that the meaning in the trade of the lines and symbols appearing in the plumbing plans created such an issue. An affidavit filed by the defendant asserted that the circles in the plans were valves, and not outlets as claimed by the plaintiff; further, that it is customary in developing plumbing drawings to omit lines showing "the direction and location of piping necessary to run from one point, depicted by a symbol, to another point." The defendant thus argues that in view of this alleged practice, and a mark in the plans alleged to be a valve, the plaintiff should have been aware that "valved . . . connections . . . to the fume hoods" included the internal piping. At the very least, the defendant is arguing that its affidavit has raised a genuine issue of fact about the meaning of those symbols that requires extrinsic evidence for its resolution.

Ordinarily the construction of the meaning intended by the words and symbols employed by the parties in committing their agreement to writing is a question of law.

*Ingalls* v. *Green,* 337 Mass. 444, 447. Where the parties employ a symbol or mark not in ordinary usage, and assert conflicting interpretations of its meaning, then the court must first ascertain what in fact the symbol denotes before determining its legal significance. The meaning of such a symbol would present a question of fact, resolvable by extrinsic evidence. *Stoops* v. *Smith,* 100 Mass. 63, 65–66. *Atwood* v. *Boston,* 310 Mass. 70, 75. *Maxwell-Davis, Inc.* v. *Hooper,* 317 Mass. 150, 152. Contrary to the defendant's contention, no such factual controversy exists over what the circle in the plans represents, for Plan P–1A specifically defined the circles to be "outlets" for the air, water, and gas services. Nor has the defendant raised a genuine issue of fact in referring to a custom in the plumbing trade of omitting the locations of piping running between two points. The defendant's affidavit merely states that such omissions are usual and customary and have occurred elsewhere in the plans. It falls short of showing that the omission of the lines within the fume hoods nevertheless indicated that the connections were still included in the plumbing specifications. In any case the defendant's contention, even if correct, could not extend the meaning of "valved . . . connections . . . to the fume hoods" to include piping within the hoods. Piping, of course, would be essential to connect the outlets within the hoods to the outside. The absence of lines in the plans does not mean that no such connections were to be made, for indeed, without such connections, the fume hoods could not be "in ready and complete operation" as required by the general contract. The necessity, however, for a connection between the inside and the outside of the hoods (the conclusion compelled by the defendant's assertion) in no way alters the plaintiff's obligation to connect only to the hood. There was thus no genuine issue of fact precluding a decision under G. L. c. 231, § 59.

The defendant's argument that the plaintiff's affidavit (made by its engineer, McKay) was defective because not made on personal knowledge is not persuasive. McKay's affidavit avers his engineering qualifications, his experience

in reading plans and specifications, and his examination of the plans and specifications in question. His assertion that the plans contained no requirements for internal plumbing was thus a statement made on personal knowledge of a question to which he was competent to testify.

2. The defendant also argues that the architect's interpretation of the specifications, duly alleged in its affidavit and uncontradicted by the plaintiff, requires summary judgment in its favor. Alternatively, it argues that this question at least raises an issue of material fact that bars summary judgment. Article 39 of § H, Part 1, of the Supplemental General Conditions (of the agreement between the defendant and the owner, which was incorporated in the agreement with the plaintiff) provided that "[t]he architect's decision shall be final in matters pertaining to interpretation of plans and specifications." The defendant alleges that after the dispute arose and the agreement with Kewanee was reached, "in the next four or five months," in conversation with the architect, it was told that the plumbing specifications covered the piping within the fume hoods. The defendant also alleges that a similar interpretation was given by the architect in a letter in April, 1966, after M I T took occupancy. Either of these events, it is argued, renders erroneous the decree in the plaintiff's favor.

The argument that the architect in the months after the dispute arose rendered a binding and effective interpretation which concluded the matter between the parties is without merit. It is clear that the question was not submitted to the architect as a dispute between the parties, nor does the defendant so contend. In addition, it is by no means clear that the architect had authority to settle disputes not interfering with work progress where, as here, responsibility for assigning work among subcontractors had been expressly excluded.[1]

---

[1] Section H, Part 1, art. 2, § 2, of the Supplemental General Conditions, reads: ". . . *It shall be* . . . [the *Contractor's*] responsibility to settle definitely with each subcontractor the portions of the work which each will be required to do and *neither the Owner nor the Architect assumes any responsibility whatever for any jurisdiction claimed by any of the trades involved in the work*" (emphasis added).

Nor is the defendant's case aided by the architect's letter in April, 1966. This letter in no way constituted a decision by the architect of a dispute between the parties under art. 39. It expressed an opinion solely on the question whether under the base contract M I T was entitled to the "fume hoods, internally piped, complete and operating in every respect." The architect's opinion on this question, read in its entirety, cannot reasonably be construed as a decision interpreting responsibility for the piping within the fume hoods. Thus, nothing done by the architect furnishes the defendant with a defence, or raises an issue of fact as to the existence of one.

The judge did not err in granting the plaintiff's motion for a summary judgment, and in denying the defendant's motion.

The final decree is affirmed with costs of appeal.

*So ordered.*

