INDUSTRIAL ENGINEERING & METAL FABRICATORS, INC. *vs.* FONTAINE BROS. & another; CITY OF PEABODY, third-party defendant.

Middlesex.    October 17, 1974. — December 9, 1974.

Present: HALE, C.J., ROSE, KEVILLE, GRANT, & ARMSTRONG, JJ.

*Contract,* Construction, Building contract. *Law or Fact. Evidence,* Of business custom. *Interest.*

In a suit in equity arising out of a construction contract, no question as to a "material fact" so as to preclude determination of the case under G. L. c. 231, § 59, was raised by an affidavit which set forth opposing interpretations of the contract and suggested an

inconsistency as to the order in which the parties depicted their opposing interpretations of the contract documents on certain plans prepared after the dispute arose. [696-697]

A final decree in a suit in equity arising out of a construction contract erroneously ordered payment of interest at the rate of ten percent a year in accordance with c. 30, § 39K, where none of the claims in dispute were ever submitted as, or as a part of, a "periodic estimate" specified by § 39K. [697-699]

Where there was disagreement whether part of a subcontractor's work was required under a construction contract, it was error to award the contractor a percentage fee on the value of the disputed work in accordance with a provision in the contract for payment for additional work which the owner had the unilateral right to order. [699-700]


BILL IN EQUITY filed in the Superior Court on June 15, 1971.

The suit was heard by *Adams, J.*

*Charles J. Speleotis,* Assistant City Solicitor, for the city of Peabody.

*Robert B. Stimpson* for Fontaine Brothers & another.

*Sally A. Corwin (Joseph M. Corwin* with her) for Industrial Engineering & Metal Fabricators, Inc.

GRANT, J.   This is a bill brought by Industrial, as the miscellaneous and ornamental iron subcontractor, against the general contractor (Fontaine) on a 1970 contract for the construction of a new high school building in the city of Peabody (city) by which Industrial sought declaratory relief with respect to and payment for certain channel and angle closures (closures) which it had installed in the building under protest and which it claimed were not required of it by the terms of the original subcontract. Fontaine impleaded the city as third-party defendant. The case was heard and determined on affidavits under G. L. c. 231, § 59 (as amended through St. 1965, c. 491, § 1). Fontaine and the city have appealed from a final declaratory decree favorable to Industrial's claims against Fontaine and to Fontaine's claims against the city.

1. There was no error in the court's consideration of the affidavit of Robert Grier, chief estimator for Indus-

trial and the person who had formulated its bid proposal to Fontaine. Grier identified the pertinent contract documents (about which there was no dispute), and the recitation of his background and qualifications affirmatively demonstrated his competence to testify of his own personal knowledge (compare *Limbach Co.* v. *George B. H. Macomber Co.* 357 Mass. 475, 480-481 [1970]) on the factual issue of whether there was a custom in the trade (see *Baccari* v. *B. Perini & Sons, Inc.* 293 Mass. 297, 303-304 [1936]; *Hardware Specialties, Inc.* v. *Mishara Constr. Co. Inc., ante,* 277, 280-281 [1974]) that the architect expressly specify and locate closures in the bid documents whenever and wherever he should intend their installation. If the affidavit, when read in the light of attachments thereto, suggested an inconsistence as to the order in which Industrial and the city's architect depicted their opposing interpretations of the contract documents on certain sepias not prepared until after the dispute arose, the inconsistency was not as to a "material fact" within the meaning of the aforementioned § 59, as the rights of the parties were to be determined by the original contract documents. Nor did the affidavit's verbal recitation of opposing interpretations raise a question of material fact; the proper construction of the contract documents was a question of law for the court. *Ingalls* v. *Green,* 337 Mass. 444, 447 (1958). *Limbach Co.* v. *George B. H. Macomber Co.* 357 Mass. 475, 479-480 (1970).

2. We believe there was error in those portions of the decree which ordered Fontaine to pay interest on Industrial's claim "at the rate of ten percent per annum in accordance with c. 30, § 39K" and which ordered the city to pay Fontaine interest on its claim at the same rate "in accordance with c. 30, § 39K."[1] Assuming (without

---

[1] The successive statutory references appear to be to the third sentence of the first paragraph of G. L. c. 30, § 39K (as amended by St. 1971, c. 887, § 1) and to the fourth sentence of that paragraph (as

deciding) that the provisions of G. L. c. 30, § 39K, were intended to apply to contracts and subcontracts of the types found in the present case, and passing any question as to whether the interest provisions of § 39K were intended to apply to a situation in which (as here) there appears to have been a good faith dispute as to what was required under the original contract documents (see *State Line Contractors, Inc.* v. *Commonwealth*, 356 Mass. 306, 323 [1969], decided under G. L. c. 30, § 39G), there is nothing in the present record to suggest that either Industrial's claim against Fontaine or Fontaine's claim against the city was ever submitted as or as a part of either of the types of "periodic estimate" contemplated by § 39K. In short, it was not alleged, nor was it made to appear, that § 39K had any application to the factual situation presented by this case.

We are of the opinion, however, that Industrial should be awarded interest on its claim from the time of the filing of the bill in this case (see *C. & R. Constr. Co.* v. *Commonwealth*, 334 Mass. 232, 233 [1956]; *State Line Contractors, Inc.* v. *Commonwealth*, 356 Mass. 306, 323 [1969]; *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare*, 359 Mass. 206, 209-210 [1971]) until the date of the entry of a new final decree after rescript, to be computed at the rate of six percent per annum (G. L. c. 231, § 6C, as inserted by St. 1968, c. 763, and as amended by St. 1973, c. 1114, § 156) until August 14, 1974, and thereafter at the rate of eight percent per

---

inserted by St. 1961, c. 627, § 1), which read in part as follows: "If the awarding authority fails to make payment as herein provided, there shall be added to each such payment daily interest at the rate of three percentage points above the rediscount rate then charged by the Federal Reserve Bank of Boston commencing on the first day after said payment is due and continuing until the payment is delivered or mailed to the contractor . . .. The contractor agrees to pay to each subcontractor a portion of any such interest paid in accordance with the amount due each subcontractor." The record before us is devoid of any evidence of any rediscount rate which may have prevailed at any time since the present dispute arose.

annum (G. L. c. 231, § 6C, as most recently amended by St. 1974, c. 224, § 2).[2] Cognate changes are also to be made in that part of the decree which awards interest to Fontaine on its claim against the city.

3. We also find error in that part of the decree which determined the city to be indebted to Fontaine for a "percentage fee of seven percent (7%) of the value of [the] extra work" performed by Industrial. In making such an award the judge appears to have relied on the provisions of art. 12.1.8 of the general conditions of the contract between Fontaine and the city (as inserted in those conditions by so called "supplementary conditions"). A review of the pertinent portions (as amended) of art. 12 ("Changes in the Work") of the general conditions discloses that its purposes were to give the owner the unilateral right, by a writing signed subsequent to the execution of the original contract documents, to require changes in the work called for by those documents and to provide the means for determining the adjustments in the contract price and other terms which should flow from changes so required.[3] We are of the opinion that the

---

[2]Statute 1974, c. 224, was approved on May 16, 1974, and, in our view, took effect ninety days thereafter. See *Horton* v. *Attorney Gen.* 269 Mass. 503, 511 (1929); *Coyle* v. *Swanson*, 345 Mass. 126, 127 (1962); *Cohen* v. *Attorney Gen.* 354 Mass. 384, 387-388 (1968); *Commonwealth* v. *Yee*, 361 Mass. 533, 535-539 (1972). Contrast *Commonwealth* v. *Sacco*, 255 Mass. 369, 410-411 (1926); *Kagan* v. *United Vacuum Appliances Corp.* 357 Mass. 680, 682 (1970).

[3]"The Owner, without invalidating the Contract, may order Changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and the Contract Time being adjusted accordingly. All such Changes in the Work shall be authorized by Change Order, and shall be executed under the applicable conditions of the Contract Documents" (art. 12.1.1). "A Change Order is a written order to the Contractor signed by the Owner and the Architect, issued after the execution of the Contract, authorizing a Change in the Work or an adjustment in the Contract Sum or the Contract Time . . . .. The Contract Sum and the Contract Time may be changed only by Change Order" (art. 12.1.2, as amended).

provisions of art. 12 have no application to the circumstances of this case, in which there was an unresolved dispute as to what was required by the original contract documents, the city's architect (without referring to art. 12) insisted on his interpretation of the contract documents and that the work in question be performed at no expense to the city, and the work was performed under protest. Accordingly, so much of the decree as purports to award Fontaine a percentage fee on the value of the disputed work is to be struck.

Other questions lurking in the record but not argued in the briefs have not been considered in this opinion. Rule 1:13 of the Appeals Court, 1 Mass. App. Ct. 889 (1972).

The case is remanded to the Superior Court for the modifications in the final decree which are required by parts 2 and 3 of this opinion. Costs of appeal are not to be allowed to any party.

*So ordered.*