**In re MEDICO ASSOCIATES, INC., Debtor.**

**Frederick G. FISHER, Jr., James M. Langan, Richard Maguire, Receivers, Plaintiffs,**

and

**New Medico Associates, Inc., Plaintiff-Intervenor \*,**

v.

**J. Henry SMITH, Commissioner of the Department of Social Services of the City of New York, and Phillip Toia, Commissioner of the Department of Social Services of the State of New York, and Robert P. Whalen, M.D., Commissioner of the Department of Health of the State of New York, and Peter C. Goldmark, Director of the Budget of the State of New York, Defendants.**

**Bankruptcy No. 76–1414–L.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 21, 1982.

\* *See* June 16, 1982 Order Regarding Compromise.

Robert Somma, Goldstein & Manello, Boston, Mass., for plaintiffs-receivers.

Barry M. Portnoy, Sullivan & Worcester, Boston, Mass., for debtor and plaintiff-intervenor.

Bradley A. Sacks, Brooklyn, N.Y., for defendant City of New York.

Mark L. Silverstein, New York City, for defendant State of N.Y.

THOMAS W. LAWLESS, Chief Judge.

## MEMORANDUM AND ORDER

Before the Court are several performance and accounting issues relating to the measure of damages sustained by the above-named plaintiffs, a Debtor and its Receivers, respectively, in arrangement proceedings under Chapter XI of the Bankruptcy Act commenced on May 26, 1976 (hereinafter, collectively "Medico"). In the Court's Memorandum and Order partially granting plaintiffs' motion for summary judgment, I found (1) that a fixed price contract requiring New York City (the "City") to pay $7.50 per patient per day over and above the basic Connecticut Medicaid rate was in existence and embodied in an April 13, 1973 letter (the "Contract") from the City to Medico; (2) that the fixed price Contract was not in violation of applicable Federal and State Medicaid/Medicare law; and (3) that Medico and its affiliate Connecticut nursing homes[1] had substantially performed in accordance with its obligations under that Contract.

While the Order granting partial summary judgment decided three specific aspects of this litigation, several issues relating to Medico's performance under the Contract and the appropriate measure of damages were not decided therein because they presented factual disputes which were incapable of resolution when ruling upon a motion for summary judgment. Accordingly, the Court held several days of trial to resolve these issues. Having heard the testimony presented at trial and having reviewed the pleadings, legal memoranda, affidavits and voluminous exhibits submitted by the parties, I make the following findings of fact and conclusions of law.

## I PERFORMANCE ISSUES

The defendants question whether Medico's performance under the Contract entitles the plaintiffs to any reimbursement

1. These nursing homes include: Cedar Lane Nursing Home, Forestville Nursing Home, Whitewood Manor Nursing Home, Golden Hill Nursing Home, New Fairview Hall Convalescent Home, Brookhollow Health Care Center, Woodmere Nursing Home, Derby Convalescent Home, and New Lakeview Convalescent Home. Of these nine nursing homes only Derby and New Lakeview are not debtors with Medico in these joint proceedings.

for the patient care provided by Medico to the New York patients or, alternatively, whether there should be an offset from any damages awarded herein for alleged defects in Medico's contractual performance. In the Court's Order partially granting plaintiffs' motion for summary judgment, I found that, except for certain specific performance issues, there was no genuine issue as to any material fact regarding the fact that Medico's performance was in accordance with the Contract.

Before discussing these performance issues, I first consider what law to apply. In the Court's partial summary judgment Order, at 12, in keeping with the ruling of *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1940), I applied the Massachusetts conflicts decisions and determined that New York, as the place of the making of the Contract, governed the nature, validity and interpretation of this Contract and New York law will govern issues relating to Medico's performance under this agreement.

Treating the reserved performance issues in turn, I find as follows:

## A MEDICARE PART A BENEFITS

▆ Medicare, title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq,* is a national health insurance program for the aged and disabled. Under Medicare certain expense monies are paid to patients who are enrolled in the Medicaid program and the physicians who render services to these Medicaid patients. Medicare Part A benefits, § 1395c–1395i, provides federal insurance for basic in-patient hospital services and post-hospital services at home or in nursing homes for the patients' room and board and other items within that category for the first 100 days of their institutionalization. New York City asserts that Medico failed to reimburse and report to the City certain Medicare Part A benefits and Social Security benefits Medico was to have collected on behalf of the New York City Medicaid patients in the Connecticut Homes. The defendant further argues that Medico's failure to reimburse and file reports with the City with respect to these benefits constituted a material breach of Medico's obligation under the Contract. Medico disputes these allegations and asserts that at all times they have been in compliance with the agreement.

The April 3, 1973 Contract provides that: Medico agrees that it will apply immediately for Medicare A benefits and will not bill us for such benefits until a determination has been made. In the event that the individual is eligible for Medicare A benefits during the first 100 days, Medico will bill us only for the difference between $26.75 and the Medicare benefits. If there is other income available such as Social Security benefits, Medico will also deduct from the $26.75 after passing along $24.50 to the patient for his personal needs.

After considering the evidence, I am convinced that Medico has properly applied for and credited to the defendants the Medicare Part A benefits and Social Security benefits received by the patients. The defendants, by affidavits or otherwise, do not seriously challenge that Medico has credited the City with the monies received under this program.[2] Medico did not bill the defendants for services eligible to be covered by the Part A program, but rather billed the defendants therefore at the end of the 100 day period only upon a determination that the patient was not eligible for Part A reimbursement.

The defendants also contend that Medico was deficient in filing reports with the City and the State regarding the Social Security and Part A benefits. As noted in the Court's Order granting partial summary judgment, at 17, the parties are in accord that the Contract between Medico and the City is subject to the provisions of governing Federal Medicaid Law, 42 U.S.C. § 1396

---

**2.** Defendants' Memorandum in Response to Plaintiffs' Memorandum cites, at 9, the affidavit of David Cohen in support of Medico's alleged mistreatment of the Medicare Part A benefits. This citation is inapposite as the Cohen affidavit relates solely to Medico's performance with respect to the Medicare Part B benefits, discussed *infra.*

*et seq.,* and New York Medicaid Law, N.Y. S.S.L. § 363 *et seq.* Medicaid law requires that a state plan for medical assistance must provide for agreements with every person or institution providing services under the plan. These agreements must contain a provision requiring the institution to "furnish the State agency or the Secretary with such information, regarding any payments claimed by such person or institution for providing services under the State plan, as the State agency or the Secretary *may from time to time request; . . .*" (emphasis added). 42 U.S.C. § 1396a(a)(27).

The City of New York alleges that Medico's failure to regularly and systematically report the receipt of the Medicaid Part A and Social Security benefits impaired the City's ability to pay benefits under the subject provider agreements. Medico disputes these allegations and asserts that at all times it has been in conformance with the Contract and applicable Medicaid law.

I find that Medico's treatment and reporting of the Medicare Part A and Social Security benefits was in conformance with the Contract and applicable law and was recognized and accepted by the City. The City's acquiescence to Medico's mode of performance and the lack of any expression of the City's dissatisfaction with the procedure enunciated by Medico with regard to these benefits in the letter dated January 10, 1974 from Bernard S. Ampel, Director of Human Services for Medico, to Henry J. Rosner, Assistant Commissioner of New York City Department of Social Services, precludes the City's present assertion of Medico's noncompliance with respect to these benefits. Medico has fully performed its duties regarding these monies.

## B MEDICARE PART B BENEFITS

 The Contract also contains a provision whereby Medico agreed that the "phy-

sicians, physiotherapists and psychiatrists employed by Medico will also submit claims for Medicare, which claims are to be paid to Medico and thereafter paid over to the Department of Social Services as a refund." The parties are in accord that this is a reference to the so-called Medicare Part B benefits, 42 U.S.C. § 1395j—§ 1395w, which establishes a voluntary supplementary insurance program for physicians and various other providers of medical services who render to qualified patients services not covered by the basic Medicare plan. The City contends that under the Contract, Medico was responsible for billing Medicare for the Part B benefits and not charging the City for services rendered for which Medico could recover payment under the Part B program. As a result of Medico's failure to do so, the City claims damages to the extent that it reimbursed Medico for Part B services. Medico argues that under the Contract Medico was itself not obligated to file claims for the Part B reimbursements. Medico further contends that at no time did it employ the types of medical personnel listed in the Contract, but rather that these medical personnel were independent physicians who only rendered services when needed by the patients.

These two disparate contractual interpretations came to a head in April, 1976. At that time, Medico agreed that thereinafter it would file for, collect and reimburse to the City the Part B monies. Medico further agreed that, to the extent possible, it would back-file for the Medicare Part B benefits and turn over these benefits to the City. However, Medico informed the City that due to Medicare regulations [3] it could only back-file for Medicare Part B benefits through October, 1974.

Medico's non-collection of the Part B benefits prior to April, 1976 was due to Medi-

---

**3.** 45 C.F.R. § 405.252 *Conditions prohibiting payment of benefits.*
 (e) *Time limitation on payment.*
After March 1968, no payment may be made under Part B of title XVIII of the Act to any person, organization, or provider of services unless a bill or request for payment made pursuant to the provisions of §§ 405.249–405.251

is submitted no later than the close of the calendar year following the year in which the services were furnished. For purposes of this paragraph, services furnished during the last 3 months of any calendar year are deemed to have been rendered in the succeeding calendar year.

co's perception and experience that the medical personnel who rendered Part B services were unwilling to await payment from Medicare, but rather demanded payment directly from Medico. Medico paid the doctors directly, billed the cost to the City and, prior to 1976 and except for the back-filing, never requested payment from the Medicare Part B program.

I find that Medico's contractual interpretation and subsequent performance, while not unreasonable, was in breach of this provision of the Contract. A reasonable reading of the Contract requires that either (1) Medico require the medical personnel who render the Part B services to look solely to Medicare for payment or (2) that Medico pay the professionals directly and then file, upon the doctors behalf, a request for payment of the Part B benefits. Medico, upon receipt of the Medicare money, would then be obligated to turn that money over to the City to the extent that the City had already compensated Medico for the Part B services.

The fact that the medical personnel who rendered the Part B services were independent contractors rather than employees goes to the reasonableness and good faith of Medico's contractual performance. Such a distinction however, does not eliminate the import of the agreement: that the City was not to be held responsible for payment to the extent that services were rendered which qualified for payment under Medicare. New York City is entitled to offset against any damages awarded to Medico herein, the amount of Medicare Part B benefits not collected and reimbursed by Medico to the City.

However, Medico's breach of its obligations with respect to the Part B benefits neither justifies the City's unilateral reduction in the Contract rate nor warrants Medico's complete forfeiture of monies earned by it under this agreement. Medico's breach was due to a misunderstanding as to the nature of its contractual duties and was not the product of willful and/or negligent conduct. Substantial performance of a contract will support a recovery of the contract price less allowances for damages for failure to strictly comply with the contract. *Porter v. Traders' Ins. Co.,* 164 N.Y. 504, 58 N.E. 641 (1900); *Spence v. Ham,* 163 N.Y. 220, 57 N.E. 412 (1900); *Nieman-Irving & Co., v. Lazenby,* 263 N.Y. 91, 188 N.E. 265 (1933); 17 Am.Jur.2d Contracts § 375; *Jacob & Youngs v. Kent,* 230 N.Y. 239, 129 N.E. 889 (1920), 23 A.L.R. 1429; *reh. den.* 230 N.Y. 656, 130 N.E. 933 (1921), 23 A.L.R. 1435.

The damages incurred by New York from Medico's failure to strictly perform are capable of ascertainment. As noted above, in April, 1976 Medico back-filed for, collected, and reimbursed to the City these benefits. While there was testimony to the effect that Medico back-filed to April, 1973 and that, to some extent, it was reimbursed for periods prior to the statutory limitation date, in computing the amount of damages incurred by the City, I hold that the City did not receive any Medicare Part B reimbursements for the period of April 3, 1973 to October 1, 1974, a period of approximately 18 months. Due to the back-filing under the Federal Regulations and timely filing from April, 1976 to October 31, 1980, Medico was able to collect $111,224.00 in Medicare Part B benefits. The average yearly amount of Part B benefits collected by Medico during this period is $18,537.00. New York City is entitled to offset against the damages awarded herein, $27,805.50, for the period of April 3, 1974 to October 1, 1976 when no Medicare payments were collected and turned over to it by Medico.

Additionally, of the $111,224.00 in Medicare Part B benefits collected by Medico, as of October 31, 1980, only $85,000.00 have been reimbursed to the City. Due to a separate dispute, New Lakeview Convalescent Home has collected but not reimbursed to the defendants, City and State, $26,-224.70 in Medicare Part B benefits as of October 31, 1980. Any damages awarded to Medico against the City and State herein are hereby further reduced to the extent that these respective defendants are entitled to receive these Medicare Part B benefits from the New Lakeview Convalescent Home.

## C UTILIZATION REVIEW REPORTS

■ The Contract also requires that "[t]he utilization review committee in each home will make a determination of the continued need for nursing care for each such patient placed at six months interval and supply this report to the Department." These so-called utilization review reports are part of a process which all Medicaid recipients undergo in order to determine the need for the medical services rendered and the quality of the services provided. *See* 45 C.F.R. 450.19(a)(3), 45 C.F.R. 450.-19(a)(4). The defendants, especially the City, question the quality and quantity of the reports furnished to it by Medico and claim that because of alleged defects in Medico's reporting obligations, the defendants are unable to ascertain the need for and quality of the services rendered and therefore claim to have no further obligations under the Contract. Medico disputes this characterization and asserts that it has satisfied the utilization review requirements of the Contract since its inception.

After review of all the evidence, including the eighteen volumes containing thousands of pages of utilization review reports contained in Exhibit B to the Second Affidavit of Daniel A. Donovan, I find that Medico has satisfied its burden of proof with respect to its performance, completion and submission of these reports to the defendants City and State.

The extent to which the defendant City seeks to predicate its breach of the Contract upon Medico's alleged non-compliance with the review and reporting requirements is unsupported by the evidence submitted by the parties. While the City had valid grounds to contest Medico's treatment of the Medicare Part B benefits and was entitled to an offset therein, the defendants' attempt to discredit Medico's contractual performance by focusing upon the utilization review reports is a spurious attack that does not deserve extensive discussion herein. The City's contention that no such reports were compiled and submitted to them prior to 1976 is contrary to the weight of the evidence before the Court.

To reiterate findings made in the Court's Order granting partial summary judgment, the defendants have not seriously challenged the quality of health care and nursing home services rendered by Medico in the Connecticut Homes. The lack of any substantive complaint regarding Medico's performance, along with New York City's maintenance and even transferral of additional patients to the Connecticut Homes after announcing its rate reduction, is an acknowledgement of the City's satisfaction with the quality of health care services provided by the plaintiffs. Any defects regarding the quality and quantity of the reports furnished by Medico are minimal and trivial and do not justify a recision of the Contract. *See City of New York v. Skyway-Dyckman, Inc.,* 22 App.Div.2d 506, 256 N.Y.S.2d 840 (1965). Further the lack of any demonstrated harm from these minor defects, prevents the assessment of any damages herein. *See Mohawk Nat. Bank of Schenectady, N. Y. v. Citizens Trust Co.,* 237 N.Y.S.2d 956, 38 Misc.2d 222 (1963).

Medico, except for its treatment of the Medicare Part B benefits, has performed and complied with the letter and spirit of this agreement and is entitled to enforce the Contract made between it and the City in 1973 when Medico undertook to provide patient care to the New York patients.

## II ALLOCATION OF LIABILITY

■ Beginning in 1976, the State of New York by statute, N.Y.S.S.L. § 367–b, established and implemented a centralized statewide medical assistance information and payment system for the purpose, among others, of receiving, processing and paying all claims of providers of Medicaid services, on behalf of all local social service districts of the state, of which the City of New York is one. N.Y.S.S.L. § 367–b(1)(c). The statute provides that the New York State Department of Social Services ("State") assumes payment responsibilities on behalf of the local social services districts on a date to be established from regulations promulgated by the State. For services provided prior to the effective transition date, the local

social services district retained payment responsibilities. All services rendered by Medicaid providers after the effective date specified in the regulations "shall be enforceable ... only against the State and shall not be enforceable ... against the social services district." N.Y.S.S.L. § 367–b(2).

The final transition date for the State's assumption of payment responsibilities on behalf of the social services district comprising the City of New York for all claims of providers of skilled nursing home care, including the nine Medico homes in this action, was established in the regulations of the State Department of Social Services as December 1, 1978. 18 N.Y.C.R.R. § 540.-6(b)(1)(vii) and (b)(2).

The judgment entered herein in favor of Medico for claims for ancillary charges ($3.00 per patient per day charge) or delinquencies (defined *infra* ), where the dates of service are prior to December 1, 1978, are thus entered against the City of New York and any judgment for such claims, where the service dates are on or after December 1, 1978, must under New York statutes and regulations be entered against the State of New York. N.Y.S.S.L. § 367–b(2) and 18 N.Y.C.R.R. § 540.6(b)(2).

The plaintiffs and the State have acknowledged in their testimony the December 1, 1978 transfer of payment responsibilities from the City to the State and the City has stipulated that it will rely on the accounting submitted by the State herein subject to the breakout of those claims for services rendered during the City's period of responsibility prior to December 1, 1978 for purposes of separate judgments.

### III ACCOUNTING ISSUES

Also before the Court are several accounting issues relating to the measure of damages sustained by Medico on account of defendants' breach of the Contract. The measure of damages for a breach of a contract is a substantive rather than procedural matter, *Atwood v. Walker,* 179 Mass. 514, 61 N.E. 58 (1901); *Steranko v. Inforex, Inc.,* 5 Mass.App. 253, 270, 362 N.E.2d 222 (1977),

therefore New York law will apply with respect to the measure of Medico's damages under this agreement. *See* Restatement (Second) of Conflict of Laws § 207 (1971). However, in matters of evidence relating to burden of proof, weight and sufficiency of the evidence in respect to damages, the law of the forum controls. See *Lenn v. Richie,* 331 Mass. 104, 111, 117 N.E.2d 129 (1954); Restatement (Second) of Conflicts of Laws § 133 (1971). Accordingly, the plaintiffs have the burden of proof with regard to the measure of damages in a breach of contract action. *D. O. Haynes & Co., v. Nye,* 185 Mass. 507, 70 N.E. 932 (1904); *Eastern Advertising Co., v. Shapiro,* 263 Mass. 228, 161 N.E. 240 (1928).

### A ANCILLARY CHARGES

Ancillary charges represent the amount of money withheld by the City and State of New York since the City unilaterally reduced the Contract rate by $3.00 per patient per day as of June 1, 1976. New York City agreed to pay the $7.50 Contract rate, New York State assumed the responsibility of the City, and Medico's full performance of its obligations under the Contract entitles it to payment at the Contract rate.

Based on the accounting submitted by the State, the amount found to be payable for the ancillary charges for the period June 1, 1976 to October 31, 1980 is $1,246,125.00 (415,375 patient days × $3.00). This amount actually exceeds the amount claimed by Medico in its accounting filed with the Court for the same period, $1,236,-882.00 (412,314 × $3.00). I adopt the accounting submitted by the State with respect to the ancillary charges and find that the total ancillary charges due to Medico for the period of June 1, 1976 to October 31, 1980 is $1,246,125.00.

The amount of money computed to be payable by the City to Medico is $789,837.00 (263,279 × $3.00 per patient day for the period June 1, 1976 to November 30, 1978). The amount computed to be payable by the State to Medico is $456,288.00 (152,096 patient days × $3.00 per patient day for the period December 1, 1978 to October 31,

1980) plus the total number of patient days × $3.00 for the period November 1, 1980 to the date of this decision for which Medico and the Connecticut Homes have rendered services to the New York patients.

In the Court's Order partially granting plaintiffs' motion for summary judgment, at 22, I found that the April 3, 1973 Contract was to remain effective as long as the New York City Medicaid patients remain in the Connecticut Homes and are provided services required by the Contract (or until the parties agree to terminate or alter the present Contract). Accordingly, New York State, as the responsible party under the Contract, see Allocation of Liability supra, is hereby ordered to commence payment to the Connecticut Homes at the rate established by and agreed to by the parties in the Contract—$7.50 per patient per day from the date of this decision.

## B DELINQUENCY CHARGES

Delinquency charges constitute the claims of providers of health care services for reimbursement for services rendered to a Medicaid patient which have not been paid for sixty days or more. The amount of delinquency charges claimed by Medico, as additional sums due under the Contract, is $218,713.99. New York City claims that the delinquency charge through October 1, 1980 is $85,034.84, deducting three items from the amount claimed by Medico: (1) $12,769.00, as previously paid by the City; (2) $34,159.00, as to which there is alleged to be no supporting documentation as to the health care services performed; and (3) $88,414.77, as to which there is alleged to be no supporting documentation showing timely resubmission of bills as required by Federal and State regulations.

With respect to the $12,769.00 of delinquency charges which the City claims to have previously paid Medico, I find that Medico has sufficiently established the amount of the delinquency and the City has not countered with sufficient evidence to establish the payment of this obligation. See Finkelstein v. Snierson, 273 Mass. 424, 173 N.E. 703 (1930); Goodyear Service Stores v. Gustafson, 16 Mass.App.Dec. 8 (1958); see also 60 Am.Jur.2d Payment § 141. The payments made by New York do not correspond with the delinquency charges claimed by Medico so as to enable the City to offset the $12,769.00 alleged payment against this established delinquency.

New York further claims that $34,159.00 of Medico's claimed delinquency charges are undocumented and unsupported by the evidence submitted by the plaintiffs. Upon review of the evidence, particularly the records Medico submitted at the last day of trial, I find that Medico has performed the services for which payment is requested and that this performance is adequately documented in the records before the Court. Therefore the defendants' objection to this portion of the delinquency charge is hereby disallowed and Medico's claim for $34,159.00 is allowed.

As to the delinquency charges of $88,414.77, which the City claimed to lack supporting documentation as to their timely resubmission, the City and State Medicaid regulations require that any claim filed by a provider which is not acted upon within six months must be resubmitted to the City within two years before the obligation to pay arises. See also 42 C.F.R. 449.81(c) (1977) repealed and recodified in different form in 42 C.F.R. § 447.45, prohibiting reimbursement of the Federal share (50%) of any claim of a provider which is submitted or paid later than twenty-four months after the date the service is rendered. Medico submitted considerable evidence that appropriate billings were, in fact, resubmitted. Whether or not Medico failed to introduce supporting documentation as to its timely resubmission of these bills, there is no contention that the services reflected in these bills were not actually rendered. Medico is entitled to be paid the reasonable value of these services, which I hereby determined to be the Contract rate. Accordingly, the defendants' objection to this portion of the delinquency charges is disallowed.

Accordingly, I find that the amount of money due and owing to Medico for the

delinquency charges is $218,713.99, of which $158,988.18 is owed by the City of New York and $59,725.81 is owed by the State of New York to the plaintiffs.

Two additional accounting issues are raised by the City, alleging improper billing with respect to the "hold days" and "days of discharge". I find that Medico's charges for days when patients were on a temporary leave of absence from the Connecticut Homes, i.e. the hold days, were made with the City's approval and according to the City's guidelines. As to Medico's billing for days of discharge, I find that only one day was improperly billed; accordingly, the City is entitled to a $27.00 deduction from the damages awarded against it herein. In all other respects, Medico's performance and billing procedures were in compliance with the Contract and applicable Federal and State Medicaid law.

## IV PREJUDGMENT INTEREST

█ Also at issue is whether the plaintiffs are entitled to pre-judgment interest on their claims for monies owed under the Contract. Medico claims that the law of the forum controls with respect to the assessment of pre-judgment interest while the defendants assert that New York law governs this issue. The dispute becomes material in that Massachusetts provides for pre-judgment interest as damages in contract actions at eight percent per .annum,[4] while New York provides for interest rates against the City and State of three[5] and six[6] percent respectively. In accordance with the ruling of *Klaxon Co. v. Stentor Co., supra,* 313 U.S. at 496–497, 61 S.Ct. at 1021–1022, this Court will look to conflict of laws decisions of Massachusetts regarding the assessment of pre-judgment interest. Although Massachusetts holds that the law of the place of contracting governs the substantive rights of the parties, *Atwood v. Walker, supra,* 179 Mass. at 519, 61 N.E. 58,

*Atwood* and the cases cited therein hold that where interest is allowed for damages for delay under a contract, and not as part of the contract, the amount to be allowed depends on the *lex fori,* i.e. the law of the forum, rather than the substantive law of the contract. *See also Goddard v. Foster,* 84 U.S. 123, 17 Wall. 123, 21 L.Ed. 589 (1872); *North Drive-in Theatre Corp. v. Park-in Theatre, Inc.,* 248 F.2d 232 (10th Cir. 1957); *Federal Surety Co. v. A. Bentley & Sons Co.,* 51 F.2d 24 (6th Cir. 1931), 78 A.L.R. 1041; *Perkins v. Benguet Consol. Mining Co.,* 55 Cal.App.2d 720, 132 P.2d 70 (1942), *cert. denied,* 319 U.S. 774, 63 S.Ct. 1435, 87 L.Ed. 1721 (1942), and later app. 60 Cal.App.2d 845, 141 P.2d 19 (1943), *cert. denied* 320 U.S. 803, 64 S.Ct. 429, 88 L.Ed. 485 (1943); 16 Am.Jur.2d Conflict of Laws § 141; *contra* Restatement (Second) of Conflict of Laws § 207, Comment e. The continued vitality of the *Atwood* decision's characterization of pre-judgment interest, for damages for delay of a pecuniary obligation owed under a contract, as procedural rather than a substantive right mandates this Court's adoption of Massachusetts law on this issue. *Klaxon, supra,* 313 U.S. at 496–497, 61 S.Ct. at 1021–1022.

New York's argument that the application of Massachusetts rate of interest would constitute a violation of the Full Faith and Credit clause of the United States Constitution was specifically addressed and rejected in *Klaxon* where the Supreme Court held that pre-judgment interest "is in no way related to the validity of the contract in suit, but merely to an incidental item of damages, interest, with respect to which courts at the forum have commonly been free to apply their own or some other law as they see fit. .Nothing in the Constitution ensures unlimited extraterritorial recognition of all statutes or of any statute under all circumstances." *Klaxon, supra,* 313 U.S. at 498, 61 S.Ct. at 1022, cites omitted. Fur-

---

4. G.L. c. 231 § 6C as amended by St. 1974, c. 224 § 2, which raised the rate from six to eight percent effective ninety days from the date of enactment, May 16, 1974. *See Industrial Engr. & Metal Fabricators, Inc., v. Fontaine Bros.,* 2 Mass.App. 695, 319 N.E.2d 726 (1974).

5. N.Y.S. General Municipal Law § 3–a.

6. N.Y.S. Finance Law § 16.

ther the application of New York law which provides for a rate of pre-judgment interest for the State and municipalities which is lower than other breaching parties, N.Y.C. P.L.R. § 5004, is contrary to the public policy of Massachusetts that the Commonwealth stands in the same position as a private person in its contractual relations. *See Sargeant v. Commissioner of Public Welfare,* —— Mass. ——, ——, Mass. Adv.Sh. (1981) 1476, 423 N.E.2d 755, 760 (1981). Accordingly, the Court will look to the law of Massachusetts regarding Medico's entitlement to and rate of pre-judgment interest.

▋ Medico and its affiliated Connecticut Homes have continued to render patient care services to the New York patients in conformance with the Contract despite the fact that the defendants have been in breach since June, 1976. The claims for the monies owed have arisen regularly over the last six years and the plaintiffs have been deprived of the use of these monies for that extended period of time. I consider it appropriate to award the plaintiffs prejudgment interest for the purpose of awarding them just compensation as a part of the total damages which would be required to effect a just indemnity. *See Trustees of the Boston & Maine Corp. v. Massachusetts Bay Transp. Auth.,* 367 Mass. 57, 323 N.E.2d 870 (1975), and cases cited.

The proper rate of interest is established by G.L. c. 231 § 6C, as in effect at the day of filing of plaintiffs' complaint.[7] *Perkins School For Blind v. Rate Setting Commission,* —— Mass. ——, ——, Mass.Adv.Sh. (1981) 1510, 423 N.E.2d 765, 772. Under G.L. c. 231 § 6C interest is to be computed "from the date of breach or demand." The breach occurred on June 1, 1976, the date the City unilaterally stopped paying the

additional $3.00 ancillary charge; therefore interest will be computed from that date. In accordance with the general common law rule simply interest will be used, as I do not consider it necessary to award compound interest in these circumstances. *See Ellis v. Sullivan,* 241 Mass. 60, 64, 134 N.E. 695 (1922); *Shapiro v. Bailen,* 293 Mass. 121, 123–124, 199 N.E. 315 (1936).

The computation of the exact interest charge becomes difficult, if not impossible, due to irregular monthly accrual of monies owed under the Contract and the failure of the accountings submitted by the parties to delineate the exact amount of money which became due and owing to Medico for each month beginning in June, 1976 to the date of this decision. In order to make an intelligent and practical assessment of interest and to avoid further delay occasioned by accounting disputes, I will choose a reasonable intermediate date for each defendant and order the Clerk of this Court to assess simple interest at eight per cent per year on the total sum owed by each defendant from the established intermediate date to the date of the entry of judgments in this matter.[8]

For the City of New York, damages awarded herein accrued from the date of breach, June 1, 1976, to November 30, 1978, and the intermediate date selected for the application of the eight per cent per year interest rate on the total amount of monies owed by the City is September 1, 1977. For the State of New York, damages awarded herein accrued from December 1, 1978 to the date of this decision, and the intermediate date selected for the application of the eight per cent per year interest rate on the total amount of money owed by the State is November 1, 1980.[9]

---

**7.** Eight per cent per annum. *Supra* note 4, at 315.

**8.** The two items not reduced to sums certain in this decision, (1) the amount and allocation of the Part B benefits collected but not properly reimbursed to the City and State by New Lakeview Convalescent Home and (2) the ancillary charges from December 1, 1978 to the date of this decision for which the State is responsible,

will be the subject of accountings to be submitted to the Clerk of this Court in accordance with the Order entered herein. Upon determination of these two amounts the interest will be assessed on the total sum owed by each defendant and judgments entered herein.

**9.** Plaintiffs also argue that because the Order partially granting plaintiffs' motion for summary judgment is on appeal before the District

## ORDER

In accordance with the foregoing Memorandum, the following amount shall be paid by the defendant *City of New York* to Medico as damages for the City's breach of the April 13, 1973 Contract:

| | | |
|---|---|---|
| Ancillary charges | + | $789,837.00 |
| Delinquency charges | + | 158,988.18 |
| Uncollected Part B Benefits | − | 27,805.50 |
| Day of Discharge | − | 27.00 |
| Total | | $920,992.68 |

In accordance with the foregoing Memorandum, the following amount shall be paid by the defendant *State of New York* to Medico as damages for the State's breach of the April 13, 1973 Contract:

| | | |
|---|---|---|
| Ancillary charges | + | $456,288.00 |
| Delinquency charges | + | 59,725.81 |
| Total | | $516,013.81 |

The foregoing amounts shall be adjusted, as follows:

(1) The City's share of the Medicare Part B benefits collected by New Lakeview Convalescent Home but not reimbursed to either the City or the State ($26,224.70 as of October 31, 1980) is to be DEDUCTED from the amount due to Medico from the City.

(2) The State's share of the Medicare Part B benefits collected by New Lakeview Convalescent Home but not reimbursed to either the City or the State ($26,224.70 as of October 31, 1980) is to be DEDUCTED from the amount due to Medico from the State.

(3) The total number of patient days (for the period November 1, 1980 to the date of this decision) for which Medico has rendered services to the New York patients *times* $3.00 is to be ADDED to the amount due to Medico from the State.

(4) The parties shall submit sworn documentary evidence regarding the amounts specified in Paragraphs (1), (2) and (3) hereof and shall file accountings with respect to these amounts within ten (10) days of the date of this decision. The Court will retain jurisdiction to determine these amounts if the parties are not in agreement regarding the amount and allocation of these monies. In view of the delays which have already occurred in these cases, no extension of this ten (10) day period will be allowed.

(5) Upon determination of the amounts specified in Paragraphs (1), (2) and (3) hereof, the Clerk of Court shall make the appropriate adjustments and shall then assess simple interest at the rate of eight percent (8%) per annum as set forth in the Memorandum and Judgments shall be entered accordingly.

(6) Post-judgment interest on the final judgment amounts determined under Paragraph (5) hereof (including pre-judgment interest) shall accrue at the rate of twelve percent (12%) per annum until such amounts are paid.

(7) The State of New York is hereby ORDERED forthwith to commence payment to the Connecticut Homes at the rate established by, and agreed to by the parties to, the Contract—i.e., $7.50 per patient per day above the established Connecticut Medicaid rate—from the date of this decision.

---

Court, this Court should also assess post-judgment interest. Such a request is unnecessary. *See Moore-McCormack Lines v. Amirault,* 202 F.2d 893 (1st Cir. 1953); *Salter v. Guaranty Trust of Waltham,* 237 F.2d 446 (1956). Of course interest on the final judgment amounts, *supra,* (including pre-judgment interest) shall then accrue at the post-judgment rate until payment is made. *Johnson v. Hazen,* 333 Mass. 636, 132 N.E.2d 391, 54 A.L.R.2d 810 (1956). Such post-judgment interest shall accrue at the rate of 12% per annum. 28 U.S.C. § 1961, G.L. c. 235 § 8, G.L. c. 231 § 6C as amended by St. 1982, c. 184 § 3 and § 4 which raised the rate from ten to twelve percent.